UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VONSEA L. JACKSON,

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

17-CV-916
DECISION AND ORDER

On September 14, 2017, the plaintiff, Vonsea L. Jackson, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On August 8, 2018, Jackson moved for judgment on the pleadings, Docket Item 16; on October 15, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 21; and on November 7, 2018, Jackson replied, Docket Item 24.

For the reasons stated below, this Court grants Jackson's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On October 25, 2013, Jackson applied for Supplemental Security Income benefits. Tr. 10. She claimed that she had been disabled since March 23, 2013, due to

post traumatic stress disorder, obsessive compulsive disorder, asthma, and a heart arrhythmia. Tr. 173, 177

On January 15, 2014, Jackson received notice that her application was denied because she was not disabled under the Act. Tr. 82, 85-92. She requested a hearing before an administrative law judge ("ALJ"), Tr. 93, which was held on March 11, 2016, Tr. 25. The ALJ then issued a decision on June 14, 2016, confirming the finding that Jackson was not disabled. Tr. 20. Jackson appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 1-3.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Jackson's objection. Jackson was examined by several different providers but only five—Esat Cirpili, M.D., a psychiatrist; Sanjay Gupta, M.D., a psychiatrist; Terry Jo Brooks, a psychiatric nurse practitioner; Susan Gunn, a psychiatric nurse practitioner; and Evelyn Coggins, M.D., a psychiatrist—are of most significance to Jackson's claims here.

### A. Mid-Erie Counseling and Treatment Services
#### 1. Esat Cirpili, M.D., Psychiatrist

On August 20, 2013, Dr. Cirpili, a psychiatrist, provided his medical opinion regarding Jackson's functional limitations. Tr. 278. Dr. Cirpili found that Jackson is moderately limited in her ability to (1) understand and remember instructions; (2) carry out instructions; and (3) maintain attention or concentration. *Id.* He found that Jackson is very limited in her ability to (1) make simple decisions; (2) interact appropriately with others; (3) maintain socially appropriate behavior without exhibiting behavior extremes;

2

and (4) appear able to function in a work setting at a consistent pace.[1]  Finally, Dr. Cirpili found no evidence that Jackson is limited in her ability to maintain basic standards of personal hygiene and grooming.  *Id*.  Based on the evidence available to him, Dr. Cirpili said that Jackson has severe impairments that have lasted or are expected to last at least twelve months.  *Id*.

### 2. Sanjay Gupta, M.D., Psychiatrist, and Psychiatric Nurse Practitioner Terry Jo Brooks

On March 9, 2016, Nurse Practitioner Brooks, a psychiatric nurse practitioner for Dr. Gupta, a psychiatrist, completed a "simplified mental impairment questionnaire" on Jackson's behalf.  NP Brooks indicated that Jackson "has been treated at Mid-Erie [Counseling] since" October 2012.  Tr. 435.  NP Brooks explained that Jackson had been diagnosed with mood disorder, post traumatic stress disorder, obsessive compulsive disorder, alcohol and cannabis use, and generalized anxiety disorder.  *Id.*  NP Brooks noted that Jackson had psychological and financial stress, as well as asthma.  *Id*.

NP Brooks also noted that Jackson "has experienced various times of symptomatic remissions and recurrences with multiple changes of medications to achieve reasonable management of [her] well being" and that Jackson "is monitored regularly for stability."  *Id*.  As a result, NP Brooks opined that Jackson is unable to—on a sustained basis—(1) understand, carry out, and remember simple instructions; (2) make judgments that are commensurate with the functions of even unskilled work, i.e.,

---

[1] Dr. Cirpili also found Jackson to be very limited in one more area, but this Court finds his handwriting illegible.  Tr. 278.

simple work-related decisions; (3) respond appropriately to supervision, coworkers, and work situations; and (4) deal with changes in a routine work setting. *Id.* And she said that those opinions covered the time period beginning on October 22, 2012. *Id.*

NP Brooks also noted that she "work[s] with Dr. Gupta at Mid-Erie," and that she "spoke with [him] regarding Ms. Jackson and he verbally agreed and gave [NP Brooks his] authorization to sign in his absence." *Id.*[2]

### B.  Psychiatric Nurse Practitioner Susan Gunn[3]

On June 10, 2011, Nurse Practitioner Susan Gunn provided her written opinion regarding Jackson's functional limitations. Tr. 441. NP Gunn found that Jackson was somewhere between moderately limited and not limited in her ability to understand and remember instructions. *Id.* NP Gunn found that Jackson was moderately limited in her ability to interact appropriately with others. *Id.* NP Gunn also found that Jackson is very limited in her ability to maintain attention/concentration and to appear able to function in a work setting at a consistent pace. *Id.* Finally, NP Gunn found no evidence of Jackson's limitations in the following areas: (1) carrying out instructions; (2) making simple decisions; (3) maintaining socially appropriate behavior without exhibiting

---

[2] At the hearing, Jackson's attorney noted that Nurse Practitioner Brooks saw "Ms. Jackson in the past, although her name doesn't show up [in the medical records], and she did fill out the form with Dr. Gupta, from what I understand, because I talked to her." Tr. 29. Counsel also said, "Dr. Gupta, when he's back to Buffalo, is going to sign himself one of the forms, so . . .although [the evidence at Tr. 434-35 is] from a non-medical source, the nurse practitioner, I hope after the hearing to be able to get a treating source statement that will be identical, but [that evidence], . . . does cover the four basic demands of unskilled work and according to that opinion, Ms. Jackson does not have the ability to sustain any of those four basic demands of unskilled work." *Id.*

[3] Nurse Practitioner Gunn works with Dr. Coggins. *See* Tr. 439, 441.

4

behavior extremes; and (4) maintaining basic standards of personal hygiene and grooming. *Id.*

On January 26, 2012, NP Gunn provided another written opinion regarding Jackson's functional limitations indicating that Jackson's mental impairments had worsened. Tr. 439. NP Gunn found that Jackson was moderately limited in the following areas: (1) understanding and remembering instructions; (2) carrying out instructions; (3) making simple decisions; and (4) interacting appropriately with others. *Id.* She found Jackson to be very limited in her ability to maintain attention/concentration and to appear able to function in a work setting at a consistent pace. *Id.* Finally, she did not find evidence that Jackson is limited in her ability to maintain socially appropriate behavior without exhibiting behavior extremes nor did she find evidence that Jackson is limited in her ability to maintain basic standards of personal hygiene and grooming. *Id.*

### C. Evelyn Coggins, M.D., Psychiatrist

On June 6, 2012, Dr. Coggins, a psychiatrist, provided her written opinion regarding Jackson's functional limitations. Tr. 437. Dr. Coggins found no evidence that Jackson was limited in her ability to maintain basic standards of personal hygiene and grooming. *Id.* But she found that Jackson was moderately limited in her ability to understand and remember instructions as well as make simple decisions. *Id.* Furthermore, Dr. Coggins found that Jackson was very limited in the following areas: (1) carrying out instructions; (2) maintaining attention/concentration; (3) interacting appropriately with others; (4) maintaining socially appropriate behavior without

5

exhibiting behavior extremes; and (5) appearing able to function in a work setting at a consistent pace. *Id.*

Based on her findings, Dr. Coggins opined that Jackson had a severe impairment or impairments that had lasted or were expected to last at least twelve months. *Id.* Dr. Coggins also noted that Jackson was her patient and that the date of her last examination was April 24, 2012. *Id.*

### III. THE ALJ'S DECISION

In denying Jackson's application, the ALJ evaluated Jackson's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

6

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Jackson had not engaged in "substantial gainful activity since October 25, 2013, the application date." Tr. 12. At step two, the ALJ found that Jackson had the following severe impairments: "post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCS), generalized anxiety disorder, mood disorder[,] and asthma." *Id.* At step three, the ALJ determined that none of Jackson's impairments alone or in combination "meet[] or medically equal[]

7

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13.

In assessing Jackson's RFC, the ALJ determined that Jackson could perform

> a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple routine repetitive tasks in low stress work (meaning no high production quotas or fast-paced assembly lines). She can have no more than superficial contact with the public and occasional contact with coworkers and supervisors, but no work in teams or tandem. She must avoid concentrated exposure to irritants, including dust, fumes, gases, odors, and poor ventilation.

Tr. 15.

In reaching those conclusions, the ALJ gave "little weight" to Dr. Cirpili's opinion that Jackson was "very limited in her ability to make simple decisions, interact appropriate[ly] with others, maintain socially appropriate behavior without exhibiting behavior extremes, and able to function in a work setting at a consistent pace." Tr. 17. Likewise, the ALJ gave "little weight" to the opinion of NP Brooks (and perhaps Dr. Gupta) that Jackson "was unable, on a sustained basis, to understand, carry out, and remember simple instructions, make simple work-related decisions, respond appropriately to supervision, coworkers, and work situations, and deal with changes in routine work settings." Tr. 18. According to the ALJ, these opinions deserved "little weight because [they are] not consistent with the claimant's activities of daily living and the medical evidence of record indicating that she is able to drive when needed, visit her son in jail, care for her sick parents, and plan her uncle's funeral." *Id.* at 17-18.

The ALJ also gave "little weight" to the opinions of Dr. Coggins and Nurse Practitioner Gunn "because they all predate the claimant's current alleged onset date of disability and they are not consistent with the claimant's reported activities of daily living and the other medical evidence of record." *Id.*

8

At step four, the ALJ determined that Jackson had no past relevant work.  Tr. 19. At step five, the ALJ determined that the Commissioner sustained her burden of establishing that Jackson had the RFC to perform "jobs that exist in significant numbers in the national economy."  *Id*.  Specifically, the ALJ determined that Jackson can work as an office helper, a mail clerk, or a document preparer.  Tr. 19-20.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Social Security Administration ("SSA")] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).   Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

9

**DISCUSSION**

Jackson argues that the ALJ erred in failing to properly evaluate the opinions of her treating physicians. Docket Item 16-1 at 20-27. Specifically, she argues that the ALJ failed to give appropriate weight to the medical opinions of Dr. Cirpili and Dr. Gupta. *Id.*[4]

SSA regulations provide that a treating physician's opinion is given controlling weight so long as: (1) it "is well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques," and (2) it "is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). "[E]ven when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). "To override the opinion of the treating physician, [the Second Circuit] has held that the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). "The failure to provide 'good

---

[4] The Commissioner does not dispute that Dr. Cirpili and Dr. Gupta were Jackson's treating psychiatrists. *See* Docket Item 22-1 at 4, 11.

10

reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

In this case, the ALJ gave "little weight" to Jackson's two treating psychiatrists,[5] because their opinions were "not consistent with the claimant's activities of daily living and the medical evidence of record indicating that she is able to drive when needed, visit her son in court and jail, care for her sick parents, and plan her uncle's funeral." Tr. 17-18. For the following reasons, the ALJ's stated reasons are insufficient.

As the Second Circuit has noted several times, "'a claimant need not be an invalid to be found disabled' under the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). "'[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'" *Id.* at 81-82 (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)). A claimant's testimony that "he rarely left the house—'periodically' to attend church and 'on an occasion' to help his wife go shopping" is insubstantial evidence for supporting a conclusion that rejects the opinions of treating physicians where the ALJ "did not cite

---

[5] There is no evidence in the record to dispute NP Brooks's statement that Dr. Gupta verbally agreed with her written assessment. *See* Tr. 435. To the extent the ALJ doubts NP Brooks's credibility on that question, Dr. Gupta can be recontacted for clarification. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). In any event, whether or not Dr. Gupta signed off on NP Brooks's evaluation does not change this Court's analysis in light of the ALJ's identical treatment of Dr. Cirpili's opinion.

11

*any* medical opinion to dispute the treating physician's conclusions that [the claimant] could not perform" substantial gainful activity. *Id.* at 81 (emphasis in original).

Here, the ALJ's stated reasons for providing "little weight" to the opinions of Jackson's treating psychiatrists—that Jackson can drive, visit her son, care for her sick parents, and plan a funeral for her uncle—may support the conclusion that Jackson is not "an invalid." *Id.* But that is not a "good reason[] for not crediting the opinion of a claimant's treating physician." *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30); *see Balsamo*, 142 F.3d at 81. Indeed, the observation that Jackson can attend to those who are close to her says little about her ability to work.

What is more, with respect to the opinions of the treating psychiatrists,[6] the ALJ failed to "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *See Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). Instead, she assigned little weight to these opinions without conducting that analysis. *See id.* Because the ALJ's stated reason for assigning little weight to the treating psychiatrists' opinions is not a "good reason," *see Balsamo*, 142 F.3d at 81, the case must be remanded so that the ALJ can reconsider Jackson's treating physician opinions and reweigh the evidence.

---

[6] This conclusion also may apply to the opinions of Dr. Coggins and her nurse practitioner, NP Gunn. But the ALJ gave other reasons for assigning "little weight" to those opinions. For example, the ALJ said that these opinions "are not consistent with . . . the other medical evidence of record," Tr. 18, but did not indicate what evidence to which she referred. Because this Court remands based on the ALJ's treatment of the opinions of Drs. Cirpili and Gupta, it need not and does not decide whether her sparse reasons sufficed to discount the opinion of Dr. Coggins.

12

The ALJ did give "some weight" to the favorable opinion of Susan Santarpia, Ph.D., a psychologist who examined Jackson on one occasion. Tr. 18. And the ALJ gave "great weight" to the conclusions of "State agency disability experts" who "are not treating or examining doctors" and who apparently did not even see Jackson but based their conclusions solely "on review of the record." *Id.* But aside from her observations about Jackson's ability to attend to the personal and family tasks noted above, the ALJ gives no reason why those opinions are consistent with the record while the opinions of Jackson's treating psychiatrists are not. *Id.* at 17-18.

Moreover, the finding that the conclusions of the "State agency disabling experts" on "mental functioning" are entitled to "great weight" because they are "consistent with the medical evidence of record, including treatment notes *and radiographic results*," Tr. 18 (emphasis added), is puzzling to say the least. Indeed, the ALJ does not specify what "radiographic results" she refers to, nor how radiographic results might possibly support conclusions about "mental functioning."[7] *Id.*

Along the same lines, the ALJ observed that "[t]he claimant has been treated solely with medications and therapy," which were not "the type of medical treatment one would expect for a totally disabled individual." Tr. 17. But aside from mentioning "hospitalizations, emergency department visits, or even frequent physician visits," *id.*,

---

[7] When a clock strikes thirteen, there is good reason to question not only that strike but the previous twelve as well. The ALJ's reference to unnamed "radiographic results" supporting "conclusions of mental functioning" makes the Court question whether all her conclusions were based on a careful analysis and consideration of the record or were simply boilerplate used to justify a conclusion. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (2d Cir. 2016)) ("[T]he ALJ . . . must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from that evidence to his conclusion.'") (emphasis in original).

the ALJ does not suggest what "type of medical treatment"—other than medications and therapy—might be expected to treat a person with a disabling mental impairment. *Id.* And the fact that a person might not have episodes requiring visits to the hospital or frequent physician visits does not preclude the conclusion that the person is disabled by a chronic—not an acute—mental health condition. In fact, that is *exactly* what Jackson's treating psychiatrists opined was the case here.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 21, is DENIED, and Jackson's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: May 15, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE